IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ARTHUR JAMES HUNT                                                                           PLAINTIFF

VERSUS                                                         CIVIL ACTION NO: 1:04cv733WJG-JMR

WAL-MART                                                                                    DEFENDANT

MEMORANDUM OPINION

This cause comes before the Court on the motion of the Defendant, Wal-Mart, for summary judgment [22-1] pursuant to Federal Rule of Civil Procedure 56(c). The Court, being fully advised in the premises and having examined the briefs and complaint in this case, finds as follows.

Statement of Facts

Arthur James Hunt is an African-American former employee of the Wal-Mart store located in Ocean Springs, Mississippi. He worked from about July 1, 2002, until June 22, 2004, as a sales associate in the meat department of the store. Hunt had been orally counseled about interacting with customers and received a written counseling after a customer complained in August 2003 about Hunt's conduct. (Summ. J. Mot., Exh. 1, pp. 84-6; Exh. 3.) Hunt stated that he did not believe that the warning he received was issued to him based on his race. (*Id.*, Exh. 1, p. 86.) The assistant manager at the time, Jason Powell, issued the warning and notified Hunt that he was not providing good customer service and that the next infraction of Wal-Mart policy could lead to discharge. (*Id.*, pp. 109-11.) Hunt did not complain to anyone at the store regarding the receipt of that warning letter. (*Id.*, p. 115.)

On November 26, 2003, another written warning was issued because Hunt suffered recurring workplace injuries due to unsafe work practices. (*Id*., Exh. 4.) The warning informed Hunt that the next level of discipline for an infraction would be termination. (*Id*.) Hunt stated he did not believe that this warning was issued because of his race or in retaliation against him. (*Id*., Exh. 1, pp. 124-5.)

On April 25, 2004, another customer complained about Hunt. Two employees, Pamela Taylor, and produce manager Ralph Hyer gave statements to store management about their observations of the customer's complaints. (*Id*., Exhs. 5-6.) Hunt was terminated in May 2004 following this complaint. (*Id*., Exh. 7.)

Hunt used the company open door policy to discuss his termination with Chris Ortstadt, store manager, who allowed Hunt to return to work on June 9, 2004. (*Id*., Exh. 2, Para. 4.) Hunt was advised that any further customer complaints would result in immediate discharge. (*Id*., Exh. 1, pp. 153-9.) Management spent time reviewing company policy on customer service with Hunt and he was notified that if he received another customer complaint in the twelve-month period following June 9th, he would be terminated. He acknowledged receiving the counseling and that he understood the policy regarding customer service. (*Id*., Exh. 1, pp. 153-9; Exhs. 8, 9.) Hunt was offered the opportunity to work in another position in which he would not have customer interaction, but Hunt declined the offer. (*Id.*, Exh. 2, Para. 5.)

On June 16, 2004, another two complaints were lodged against Hunt by customers. (*Id*., Exhs. 10-11.) Again, two employees gave statements regarding the incidents and Hunt was terminated on June 22, 2004, based on the two complaints. (*Id*., Exh. 12.)

Hunt filed a charge of racial discrimination with the Equal Employment Opportunity Commission [EEOC] on July 14, 2004.  (*Id*., Exh. 13.)  Hunt's sole allegation listed in his charge of discrimination listed in his EEOC complaint was race discrimination.  (*Id*.)  The EEOC issued a no-cause determination on July 16, 2004, because Hunt failed to identify any individual treated better than he under the same circumstances.  (*Id*., Exhs. 14, 15.)  Hunt subsequently filed his complaint in this court alleging discrimination based on race on September 21, 2004.  (Ct. R., Doc. 1.)  Wal-Mart asserts that Hunt has not exhausted his administrative remedies for any pattern or practice claim related to the alleged discrimination against him because he did not include these allegations in his EEOC charge of discrimination.  (Summ. J. Mot., p. 4.)

Hunt filed his amended complaint on June 13, 2005, alleging that he was terminated because of his race in violation of Title VII and asserting that Wal-Mart retaliated against him also in violation of Title VII.  Hunt filed a motion to amend his complaint on November 22, 2004, to add allegations of class and individual charges of racial discrimination, retaliation and hostile work environment.  (Ct. R., Doc. 20.)  According to the Defendant, Hunt's amended complaint expands the scope of his initial claims by claiming that Wal-Mart limited the number of African-Americans hired for meat department jobs; denying promotions to African-Americans; assigning different work schedules to African-Americans than those assigned to white employees; failing to remedy past discriminatory policy and practices; and maintaining a hostile work environment to African-American employees.  (Ct. R., Doc.  12.)

Hunt's EEOC charge alleges only that he was discriminated against because of his race.  (Summ. J. Mot., Exh. 13.)  According to the Defendant, Hunt failed to exhaust his administrative remedies through the EEOC for his class, hostile work environment and retaliation claims.

3

(Summ. J. Mot., p. 7.) Wal-Mart asserts that Hunt's EEOC charge does not put it on notice of his claims of retaliation, hostile work environment or that he intended to file a class action against Wal-Mart. (*Id*.)

According to Wal-Mart, any allegations of a pattern or practice of discrimination should be dismissed because the claims are meritless. (*Id*., p. 8.) Hunt testified that he had no information to support his assertion that Wal-Mart had a policy of limiting the number of African-Americans hired in the meat department. (*Id*., Exh. 1, pp. 185-192.) He had no information regarding denying any African-American applicant the opportunity to work in the meat department. (*Id*.) Hunt knew of no qualified African-American who was denied a promotion to any management position above store manager. (*Id*.) Hunt stated he would have to review company records to determine whether he had any information to support his pattern and practice claims. (*Id*., pp. 185-216, 276-77.)

He was unable to provide any facts to support his assertion that Wal-Mart maintained a hostile work environment toward African-American employees. (*Id*., pp. 217-19.) Hunt stated that he was not subjected to a hostile work environment by any supervisor at Wal-Mart. (*Id*., p. 220.) Despite his assertion during his deposition that he would provide documentation to support his claims to Wal-Mart, he never produced the documents. (*Id*., pp. 278-80; Exh. 16.)

Wal-Mart contends that Hunt's racial discrimination claim is based on alleged disparate treatment between Hunt and Linda Almond, a Caucasian. (Summ. J. Mot., p. 12.; Exh. 1, pp. 141-2; 241-2.) Hunt testified that he believes his May 5, 2004, termination was racially motivated. (*Id*., p. 137.) He states that the basis for this belief is the termination and subsequent rehiring of a white female employee named Linda. (*Id*., pp. 137-43.) He stated that Linda

4

worked in the meat department, however, he was not aware of whether she had customer complaints lodged against her at the time of her termination.  (*Id*.)  He testified that he had no idea why she was terminated because the event happened before he began working at Wal-Mart.  (*Id*.)  He states he has no idea why her treatment was better than his treatment, and that he did not know why she was discharged.  (*Id*.)  He went on to state that he did not know of another employee who received customers complaints at the store.  (*Id*., pp. 145-6.)  According to the store manager, Almond did not receive any customer complaints and no other employees at that Wal-Mart received complaints similar to those lodged against Hunt.  (*Id*., Exh. 2.)

Hunt asserted that he did not receive the complaints which allegedly led to his termination.  (*Id*., Exh. 1, pp. 87, 106-9, 114.)  Wal-Mart asserts that the store was entitled to rely on the statements provided by other employees who witnessed the events leading to Hunt's discharge.  (Summ. J. Mot., p. 16.)  Wal-Mart argues that there is no evidence of a discriminatory motive in the circumstances leading up to Hunt's termination.  (*Id*., p. 17.)  As such, Wal-Mart argues that Hunt cannot establish his *prima facie* case of racial discrimination and even if he did so, cannot rebut the legitimate reason advanced by Wal-Mart for his termination.  (*Id*.)

In addition, Wal-Mart argues that Hunt cannot establish a *prima facie* case of retaliation by Wal-Mart.  (*Id*., p. 18.)  When questioned regarding the protected activities that Hunt claims he engaged in which led to the alleged retaliation by Wal-Mart, Hunt stated that he did not complain to the company of unfair treatment as a result of his termination in May 2004.  (*Id*., Exh. 1, pp. 182-5.)  He also answered that Wal-Mart took no action to retaliation against him.  (*Id*.)

5

Finally, Wal-Mart asserts that Hunt's state law claims of intentional infliction of emotional distress should be dismissed, although Hunt claimed he suffered stress due to lack of income after he was terminated and because he had to file a lawsuit. (*Id*., pp. 243-9.) The Defendant contends that Hunt's claim for intentional infliction of emotional distress must fail because employment disputes generally do not fall within the category of activities which invoke outrage of revulsion. (Summ. J. Mot., p. 21.) In his response to the motion for summary judgment, Hunt concedes that the retaliation and hostile work environment claims are not properly before the court. (Pl.'s Resp., p. 5 n.2.)

Hunt asserts that his termination was racially motivated. (Pl.'s Resp., p. 1.) Hunt contends that after his first employment termination he contacted his district manager complaining that his termination was due to his race, and at that point, Ordstadt informed Hunt that he was eligible for rehire. (*Id*., p. 2.) When he was terminated the second time, allegedly because of customer complaints, Hunt filed his charge with the EEOC. (Id.; Exhs. 4-5.) His complaint alleged that all the customers that complained about him were white and that he was treated differently in the meat department because of his race. (*Id*., Exh. 5, p. 3.)

Hunt asserts that his EEOC complaint "when fairly construed" included class and individual (his own) claims of pattern and practice racial discrimination. (Pl.'s Resp., pp. 5-6.) He argues that each of the claims listed in his amended complaint should be "deemed included in his administrative charge". (*Id*., p. 6.) He contends that he met all the prerequisites for filing his amended complaint because he sought relief from the EEOC by speaking with them and filling out the appropriate paperwork. (*Id*., p. 7.) He claims he told the EEOC that African-Americans

in his department were not treated the same citing evaluations, promotions, raises and salary differences.  (*Id.*)

Hunt argues that although his EEOC charge is not detailed, he claims that the EEOC drafted the language in the charge after he spoke with them and gave them his completed form. (*Id.*, Exh. 4, ¶¶ 2-7.)  He provides that he informed the EEOC that whites were treated better than he was in the above mentioned areas and regarding reprimands and terminations. (Pl.'s Resp., p. 7.)  He contends that his pattern and practice claims should grow out of his EEOC complaint. (*Id.*)  He claims to have statistical data to support his pattern and practice claims.  (*Id.*, pp. 10-12.)

Hunt contends that the reason for his termination was pretextual.  (*Id.*, p. 13.)  He claims that African-American and white employees were treated differently regarding situations when a customer complains about an employee.  (*Id.*, p. 14.)  He claims that he and another African-American employee were told they would be terminated if another customer complaint was lodged against them while a white employee was not terminated and received pay raises in spite of having customer complaints.  (*Id.*, Exh. 15.)

Hunt claims his *prima facie* case is established because he is a member of the protected class, he was qualified for the position, he suffered adverse employment action because he was terminated, subjected to hard reprimands, he had a low salary, raises and evaluations and he was replaced by someone outside the protected class.  (Pl.'s Resp., p. 15, n. 7.)

According to Wal-Mart, the employees which Hunt claims have identical circumstances to his in some case had longer work experiences which resulted in the salary differences, and better job performances than Hunt.  (Def.'s Reb., Ortstadt Aff.)  The individual who allegedly

received better treatment than Hunt following a customer complaint, Jennifer Clifton, was counseled following a customer complaint on August 2, 2004. (*Id*.) Clifton had no prior counseling sessions or recorded customer complaints before this incident. (*Id*.) Wal-Mart contends that Clifton received no further customer complaints, and when offered the chance to move to an area which did not involve so much customer contact, she transferred. (*Id*.) Hunt and Clifton were not similarly situated, according to Wal-Mart. (*Id*.)

## Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003), *cert. denied* 540 U.S. 1107 (2004). All disputed facts are resolved in favor of the party opposing the summary judgment. *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). The moving party bears the burden of establishing that there are no genuine issues of material fact. The nonmoving party may not rely upon mere allegations or denials within the pleadings, but must come forward with specific facts showing the presence of a genuine issue for trial. *Whelan v. Winchester Prod. Co.,* 319 F.3d 225, 228 (5th Cir. 2003).

## Discussion

Title VII governs Hunt's employment discrimination claims. 42 U.S.C. §§ 2000e, *et seq.* Under Title VII, an employer cannot "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. §§ 2000e-2(a)(1). To establish a *prima facie* case of discrimination, Hunt must show the following: (1)

that he is a member of a protected class; (2) he was qualified for the position that he held before being discharged; (3) he was discharged; and (4) his employer filled the position with a person who is not a member of the protected class. *Wheeler v. BL Dev. Corp*., 415 F.3d 399, 405 (5th Cir. 2005), *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n.13 (1973). The presentation of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff. *Bauer,* 169 F.3d at 966. If Hunt, therefore, establishes a *prima facie* case, the Defendant must then give a legitimate, nondiscriminatory reason for his termination. *McDonnell Douglas*, 411 U.S. at 802. Then, if Wal-Mart advances such a reason, Hunt must show that the reason offered by Wal-Mart is actually a pretext for discrimination. *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). Should Hunt present credible direct evidence that discriminatory animus was at least partially motivated or was a substantial factor in the adverse employment action, then it becomes Wal-Mart's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus. *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993).

In other words, to establish disparate treatment, Hunt must show that Wal-Mart gave preferential treatment to other, similarly situated, employees under "nearly identical" circumstances. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995); *Bryant v. Compass Group USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005). Discrimination can be proven through direct or circumstantial evidence. *Portis v. First Nat. Bank of New Albany, Miss.,* 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.,* 427 F.3d 987, 992 (5th

9

Cir. 2005). If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus. *Brown,* 989 F.2d at 861 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, (1989)).

This burden of production "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Evidence of pretext alone may, but not always, sustain a fact-finder's determination of unlawful discrimination. *St. Mary's* at 148. In particular, evidence of pretext is not enough where the plaintiff has created only a weak issue of fact whether the employer's reason is untrue, and there is "abundant and uncontroverted independent evidence that no discrimination occurred." *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

I. <u>Racial Discrimination</u>

In his amended complaint, Hunt contends that he was a victim of racial discrimination on the part of Wal-Mart. (Ct. R., Doc. 20, p. 2.) He further avers that Wal-Mart had a pattern of discrimination against African-American employees as evidenced by allegations of limiting the number of African-American employees in the meat department and failing to promote African-Americans to management positions. (Ct. R., Doc. 20, p. 3.) Hunt contends that white co-employees were given privileges of scheduling, better pay, recognition, fewer terminations and fewer reprimands because of their race, which resulted in Hunt not having received the same benefits. (*Id.*, pp. 3-4.) Unfortunately, Hunt's allegations are unsubstantiated.

Wal-Mart produced evidence that the reason Hunt was reprimanded, and ultimately terminated, was due to numerous customer complaints, and Hunt's failure to rectify the behavior resulting in the reprimands and termination warnings even when he was offered work in an area which would take him out of repeated contact with customers. Hunt offered no evidence that the reason advanced by Wal-Mart for his termination was pretextual. Although Hunt contends that another employee was allowed to continue working, following a customer complaint, he does nothing to counter the explanation that the individual chose to move out of an area of high customer contact and received no further complaints as a result. Hunt was extended the same offer. Hunt's arguments do nothing to establish that Wal-Mart's explanation was false, and evidence of discriminatory animus. At best, the evidence that a similarly situated employee received the same treatment as Hunt, but reacted differently to the treatment. Either way, Hunt was terminated for the legitimate reasons as outlined by Wal-Mart and Hunt has failed to establish intentional discrimination. *See Valdez v. San Antonio Chamber of Commerce,* 974 F.2d 592, 596 (5th Cir. 1992) ("poor job performance" is a legitimate reason for terminating someone's employment).; *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir. 2001); *Price,* 283 F.3d at 720. When the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only a tenuous inference of pretext, summary judgment in favor of the Defendant is appropriate. *See West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 385 (5th Cir. 2003); *Rubinstein v. Adm'rs of Tulane Educ. Fund,* 218 F.3d 392, 400 (5th Cir. 2000); *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 894 (5th Cir. 2003). The Court, therefore, concludes that Wal-Mart's motion for summary judgment on Hunt's claim of racial discrimination should be granted.

II.     Exhaustion

Under Title VII, an individual bringing suit must follow certain administrative requirements, such as filing a charge with the EEOC, as a precondition to the filing of the lawsuit in district court. *Taylor v. Books A Million,* 296 F.3d 376, 379 (5th Cir. 2002), *cert. denied* 537 U.S. 1200 (2003). Courts have no jurisdiction to consider Title VII claims which include claims where the aggrieved party has not exhausted administrative remedies. *Taylor*, 296 F.3d at 379. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-9 (5th Cir. 1996). One of the central purposes of the charge is to put the employer on notice of the existence and nature of the charges. *Manning,* 332 F.3d at 878-9

When the EEOC charge alleges only one theory of discrimination, the plaintiff cannot advance additional charges of discrimination in his court action related to that charge. *Thomas,* 220 F.3d at 395. Again, the scope of plaintiff's claims in court under Title VII is limited to the scope of his complaint to the EEOC. *Thomas v. Texas Dep't of Crim. Justice,* 220 F.3d 389, 395 (5th Cir. 2000); *Young v. City of Houston,* 906 F.2d 177, 179 (5th Cir. 1990). The scope of the inquiry is not, however, limited to the exact charge brought to the EEOC. *Young,* 906 F.2d at 179. EEOC charges are to be given a liberal construction, especially those authored by unlawyered complainants. *Fellows,* 701 F.2d at 451.

Hunt's EEOC charge, under the section "cause of discrimination based on," has checked the box for "race." (Summ. J. Mot., Exh. 13.) The narrative statement of discrimination contends that Hunt was discriminated against because of his race, in that he was allegedly treated

differently than white employees. (*Id.*) The charge of discrimination makes no mention of widespread racial discrimination. (*Id.*)

In his amended complaint, Hunt asserts that Wal-Mart has not rectified an alleged past pattern of discrimination and has maintained a work environment which is hostile to members of his race. (Ct. R., Doc. 20., p. 4.) Hunt also claims that he was the victim of retaliation in that he was terminated because of his complaints to superiors when he was terminated the first time. (*Id.*, p. 4.) He claims he was shunned and made to feel isolated in the workplace as a result of the retaliation. (*Id.*, p. 5.) None of these allegations were listed on Hunt's EEOC charge of discrimination. (Ct. R., Doc. 22, Exh. 13.)

Hunt conceded that any claims of retaliation or hostile work environment are not properly before the court. (Pl.'s Resp., p. 5, n.2.) The Court, therefore, finds that Wal-Mart is entitled to summary judgment on those claims.

There is no evidence in Hunt's EEOC charge that he asserted anything other than an individual claim of discrimination based on his race. (Ct. R., Doc. 20, Exh. 13.) Moreover, this suit was not filed as a class action. There was no mention of pattern and practice discrimination in Hunt's EEOC charge, and no evidence that the practices and policies of the Defendant was investigated by the EEOC. Accordingly, the Court finds that Wal-Mart is entitled to summary judgment on Hunt's claims of class discrimination and pattern and practice discrimination due to Hunt's failure to exhaust administrative remedies on these claims. *Hebert v. Monsanto Co.*, 682 F.2d 1111, 1116 (5th Cir. 1982); *National Ass'n of Govern. Emp. v. City Pub. Serv.*, 40 F.3d 698, 711 (5th Cir. 1994).

III.     Claim for Intentional Infliction of Emotional Distress

Recovery for a claim of intentional infliction of emotional distress can be had when a plaintiff shows "there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . the result being reasonably foreseeable . . . even though there has been no physical injury." *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Lawson v. Heidelberg E.*, 872 F. Supp. 335, 338 (N.D. Miss. 1995). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002), quoting *Speed v. Scott,* 787 So.2d 626, 630 (Miss. 2001).  Employment disputes including termination generally do not fall within this territory. *Prunty v. Arkansas Freightways, Inc.* 16 F.3d 649, 654-5, *reh'g & reh'g en banc denied* 21 F.3d 1110 (5th Cir. 1994); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.,* 797 So.2d 845, 851 (Miss.2001).  A party must prove that the defendant's conduct was "extreme and outrageous" to recover damages for intentional infliction of emotional distress.  *See Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 316 (5th Cir. 2003); *Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir.1994); *Lawson,* 872 F. Supp. at 338.

"Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Prunty,* 16 F.3d at 654.  Hunt avers that he suffered emotional distress, humiliation, embarrassment and mental anguish as a result of his termination.

14

(Ct. R., Doc. 20, p. 5.)  Although Hunt may have been upset by his termination by Wal-Mart, none of Hunt's allegations regarding his treatment rises to the level of extreme and outrageous. As a result, the Court concludes that Wal-Mart is entitled to summary judgment on Hunt's claims for intentional infliction of emotional distress because the alleged conduct advanced by him does not rise to the level contemplated for recovery of damages for intentional infliction of emotional distress.

In summary, the Court finds that Wal-Mart is entitled to summary judgment on all claims advanced by Hunt in his amended complaint, and that the case should be dismissed with prejudice.

## Conclusion

For the reasons given above, this Court finds that Wal-Mart's motion for summary judgment [22-1] should be granted.  A separate summary judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date.  Each party shall bear their respective costs associated with this motion.

THIS the 30th day of January, 2006.

*Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE